# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ )<br>**SIOBHAN WALSH** )<br> )<br> **Plaintiff** )<br> )<br>**v.** )<br> )<br>**TELTECH SYSTEMS, INC.** )<br> )<br> **Defendant** )<br>_____) | **Civil Action No._____** |

---

## COMPLAINT
### (with jury demand endorsed hereon)

---

NOW comes Plaintiff, **SIOBHAN WALSH** and for her complaint against Defendant **TELTECH SYSTEMS, INC**., states and avers as follows:

### NATURE OF THE ACTION

1.      Teltech Systems, Inc., offers for sale in the Commonwealth of Massachusetts and other States the "SpoofCard Service", which provides its customers the capacity to change (or "spoof") the Caller ID that is displayed on a called party's telephone and disguise and change the callers voice. These calls can likewise be recorded by the caller without the knowledge or permission of the called party.  With Defendant's full knowledge and active promotion, advertising and encouragement the SpoofCard is regularly utilized within the Commonwealth to commit acts of domestic violence, falsely accuse others of crimes, fake kidnappings, interfere with personal relationships, avoid lawful commitments (including jury duty), make false police reports, make false emergency calls, obtain evidence for court cases in a fraudulent and illegal manner, and otherwise defame, harass, annoy and invade the privacy of others.   This is a civil action for

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

permanent injunctive relief, compensatory damages, exemplary damages (including treble damages and punitive damages), and attorneys' fees and costs of suit under the Massachusetts Consumer Protection Act, M.G.L.A. ch. 93A**,** § 1, *et seq.* arising from Defendant's willful and intentional violations of the criminal statutes and laws of the Commonwealth of Massachusetts and for the creation, marketing, promotion and sale of illegal services within the Commonwealth and directed at the citizens of the Commonwealth.  As set forth herein, Plaintiff has suffered direct injuries as a result of "spoofing", including but not limited to shock, severe and debilitating emotional distress, annoyance, harassment, invasion of her privacy, loss of income, loss of employment opportunities and other like and serious harm.

## THE PARTIES

2.      At all relevant times, Plaintiff Siobhan Walsh (hereinafter "Plaintiff") was a resident of the Commonwealth of Massachusetts.

3.      At all relevant times, Defendant Teltech Systems, Inc. (hereinafter "Defendant") was and is a for-profit corporation with its principal place of business at 1433 Hooper Avenue, Suite 129, Toms River, New Jersey 08753.

## JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a), as Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds the sum of $ 75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendant under M.G.L.A. ch. 223A, § 3, as Defendant has caused Plaintiff tortious injury by acts or omissions in the Commonwealth of Massachusetts.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims occurred within the Commonwealth of Massachusetts.

## STATEMENT OF RELEVANT FACTS

7.      As of January 28, 2009, John Luciano (hereinafter "Luciano") lived with his wife, Melissa, in a second-floor apartment no. 2L in 86 Granger Street, a multifamily dwelling with four rental units located in Quincy, Massachusetts.

8.      Plaintiff was a first-floor neighbor of Mr. Luciano's as of January 28, 2009, and lived directly below him in apartment unit 1L in 86 Granger Street in Quincy, Massachusetts.

9.      In the early morning hours of January 28, 2009, six calls were placed to Plaintiff's home phone from a certain Michael DiLorenzo's ("Mr. DiLorenzo") cell phone (617-306-0339) and from a trac-phone (617-671-8146) possessed by Mr. DiLorenzo and/or his wife, Mrs. Johnienne DiLorenzo ("Mrs. DiLorenzo").

10.     All six of these calls placed to Plaintiff's phone were made to look like they were coming from either Mr. Luciano's home number (617-773-8284) or Mr. Luciano's cell phone (617-347-3463).

11.     In placing the calls to Plaintiff, Mr. DiLorenzo and Mrs. DiLorenzo used the SpoofCard provided by Defendant to mimic Mr. Luciano's phone number without his permission or consent and without the knowledge, permission or consent of Plaintiff.

12.     When Plaintiff was awoken by the first phone call from Mr. DiLorenzo and Mrs. DiLorenzo at about 1:30 A.M. on January 28, 2009, she noticed that the caller ID displayed that the phone number was blocked.

13.     When the phone rang a second time, Plaintiff saw that the caller ID indicated that the call was coming from "LUCIANO, Melissa, Ph# 617-328-5316."

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

14.     Plaintiff answered her phone and heard a male voice, which she assumed was Mr. Luciano's voice.  Plaintiff asked what the caller wanted and the caller said, "Meet me in the laundry room.  I can't wait to f*** you up the ass so hard!  I know what you like!"

15.     Plaintiff hung up her phone, but the phone calls continued throughout the night until Plaintiff finally unplugged her phone at around 4:00 A.M.

16.     Later during the morning of January 28, 2009, Plaintiff checked her voice messages and found three new messages spoken in a voice that she thought was Mr. Luciano's voice.  The messages all contained obscene content, such as, "Why didn't you meet me?  I want to f*** you in the ass!"

17.     That same day, on January 28, 2009, Plaintiff contacted the Quincy Massachusetts Police Department and told them about the calls.  The police commenced an investigation of Mr. Luciano.

18.     During the evening of January 28, 2009, Quincy police officers broke down Mr. Luciano's apartment door and took him into custody at his residence.

19.     Police held Mr. Luciano overnight at the Quincy Police Station.

20.     Mr. Luciano was charged in an application for criminal complaint with threatening to commit a crime and criminal harassment.

21.     On January 29, 2009, Mr. Luciano was transported from the Quincy Police Station to the Quincy District Court for his arraignment on a criminal complaint charging him with threatening to commit a crime and criminal harassment, docket number 0956 CR 0726, and he was held on $1,500.00 cash bail.  After his arraignment, he was transported in custody to the Dedham House of Correction, where he was held until February 2, 2009, after posting bail.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

22.     At approximately 11:21 A.M. on February 2, 2009, Plaintiff received a voicemail on her home phone from another blocked number.  The voicemail contained a threat, telling Plaintiff there would be retaliation against her if she did not drop the criminal charges.

23.     At approximately 11:24 A.M. on February 2, 2009, Plaintiff received another threatening voicemail.

24.     At 12:12 P.M. on February 2, 2009, Plaintiff received another voicemail from a blocked number.  This time, the threats were similar to the first two messages, but spoken in a female voice.

25.     Convinced that Mr. Luciano was behind these phone calls Plaintiff applied for a Stay Away Order from Norfolk County Superior Court in Dedham, Massachusetts, which was granted on February 2, 2009.

26.     After Plaintiff reported to the Quincy Police Department the harassing phone calls of February 2, 2009, Mr. Luciano was arrested and taken to the Quincy Police Station.

27.     The calls made to Plaintiff's phone on February 2, 2009, led to felony witness intimidation charges being filed against Mr. Luciano in another application for a criminal complaint in the Quincy District Court, resulting in another arraignment on a new criminal complaint on this charge, docket number 0956 CR 1482.

28.     On December 4, 2009, Mr. DiLorenzo and Mrs. DiLorenzo admitted to Quincy Police that they mimicked Mr. Luciano's phone number and called Plaintiff.  Mr. DiLorenzo admitted that he and his wife were in possession of the trac-phone using the 617-671-8146 number. Mr. DiLorenzo likewise admitted to police that he and Mrs. DiLorenzo used a SpoofCard, manufactured, marketed and sold by Defendant, to call Plaintiff on January 28, 2009, while "spoofing" Mr. Luciano's number.

5

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

29.     Prior to the aforementioned admissions by the DiLorenzo's, Plaintiff reasonably believed that the subject calls had been made by Mr. Luciano.

30.     Criminal complaints were filed against Mr. DiLorenzo and Mrs. DiLorenzo for one count each of criminal harassment in violation of G.L. c. 265, § 43A and threats to commit a crime in violation of G.L. c. 275, § 2, for the calls made to Plaintiff on January 28, 2009, as well as one count each of intimidation of a witness in violation of G.L. c. 268, § 13B, for the calls made to Plaintiff on February 2, 2009, and one count each of misleading a police officer, in violation of G.L. c. 268, § 13B, for leading police to believe that Mr. Luciano was the person responsible for the calls made by Mr. DiLorenzo and Mrs. DiLorenzo.

31.     On December 16, 2009, the Norfolk County District Attorney filed two written motions with the Quincy District Court seeking dismissal of both criminal complaints against Mr. Luciano, and each motion was allowed.

32.     As a direct and proximate result of the aforementioned incidents, Plaintiff has suffered harassment, an invasion of her privacy, fear and apprehension, sleeplessness and severe and debilitating emotional distress.  Plaintiff was likewise compelled to move from her residence as a result of her fearfulness and stopped working at the Boston Garden for events due to her fear of traveling alone at night.   Plaintiff has also suffered loss of quality and enjoyment of life as she was forced to live in fear that someone was actively seeking to assault her.

## DEFENDANT'S CULPABILITY

33.     For several years, Defendant has offered the SpoofCard service (hereinafter "SpoofCard") for a fee to consumers within the Commonwealth of Massachusetts. According to Defendant, SpoofCard "operates like a regular long distance calling card service, but provides each customer the capability to change (or "spoof") the Caller ID that is displayed on a called

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

party's telephone" in order to deceive, harass and annoy the called party.  SpoofCard likewise permits the caller to change and disguise his/her voice as well in order to deceive, harass and annoy the called party and tape the call without the knowledge or consent of the called party.

34.    For several years prior to the events set forth above, Defendant has had actual knowledge that the SpoofCard product is regularly utilized for illegal purposes.  By way of example, Defendant had actual knowledge of the following:

a.    Queens, New York District Attorney Richard Brown indicated that "from a law enforcement perspective, (SpoofCards) are anything but a spoof."  As Mr. Brown explained, these cards are "virtually untraceable" and have been used by "identity thieves and hackers to pose as government and financial entities as a means to unscrupulously obtain personal information from unsuspecting consumers and also by defendants in domestic violence cases to harass their victims".

b.    Criminal defense attorneys and prosecutors from across the country have indicated that alleged victims in domestic violence cases have utilized the SpoofCard to frame the defendant and obtain the defendant's arrest for domestic violence or for violation of protective orders.

c.    There have been repeated, well publicized reports that the card has been used for reporting false instances of criminal conduct, causing law enforcement personnel (including SWAT teams) to suddenly and unexpectedly appear at the home of the victim.

d.    Defendant has been subpoenaed to provide documents in cases across the country evidencing the use of SpoofCard in domestic violence, telephone harassment, stalking, invasion of privacy, theft and fraud cases, including cases involving facts very similar to the ones set forth above.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

e.      The illegal uses of the SpoofCard have been referenced in several publications and news reports.

f.      Governmental agencies, including but not limited to the Federal Communications Commission, have indicated that the SpoofCard has been utilized to facilitate a wide variety of "malicious schemes," including identity theft, "swatting," domestic violence and telephone harassment.

35.     In order to encourage use of the SpoofCard for illegal purposes, Defendant has intentionally and willfully published "testimonials" where alleged customers have claimed, amongst other things, to have utilized the SpoofCard to harass their former spouses, commit acts of domestic violence, secretly tape record conversations, falsely accuse others of crimes, fake kidnappings, interfere with personal relationships, avoid lawful commitments (including jury duty), make false police reports, make false emergency calls, obtain evidence for court cases in a fraudulent and illegal manner, and otherwise defame, harass, annoy and invade the privacy of others.    Defendant has likewise actively advertised on the internet and otherwise the use of the SpoofCard to commit the aforementioned offenses.

36.     Given these advertisements and knowledge of SpoofCard's prior usage, it is clear that the use of SpoofCard in the manner set forth above by the DiLorenzos was reasonably foreseeable and encouraged by Defendant. It is likewise clear that the harm suffered by Plaintiff was reasonably foreseeable.

**FIRST CAUSE OF ACTION**
**(Violations of G.L. c. 93A)**

37.     Plaintiff incorporates the averments set forth in paragraphs one (1) through thirty-six (36) of the Complaint as if fully rewritten hereunder.

8

38.     Defendant is a "person" engaged in trade and commerce within the meaning of G.L. c. 93A.

39.     As set forth above, Defendant has purposely, willfully and intentionally aided and abetted violations of Massachusetts criminal statutes, including but not limited to: (i) G.L. c. 269, § 14A (prohibiting annoying telephone calls); (ii) G.L. c. 265, § 43A (prohibiting criminal harassment); (iii) G.L. c. 272, § 99 (eavesdropping, wiretapping and other interception of communications); (iv) G. L., c. 266, § 37E (prohibiting identity theft) and (v) G.L., c. 265, § 43 (prohibiting stalking), in the instant case and in similar instances throughout the Commonwealth of Massachusetts.

40.     Defendant has knowingly, willfully, intentionally and maliciously engaged in unfair and deceptive practices and violated G.L. c. 93A § 2 in the following respects, among others:

a.      By aiding and abetting and directly profiting from the criminal activity of the DiLorenzos and others as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

b.      By engaging in violations of state law as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts. These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

c.      By engaging in immoral, unethical, oppressive, or unscrupulous behavior and business practices as outlined above in connection with the advertising, promotion and sale of the SpoofCard in the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

d.      By purposely and intentionally invading the privacy of Plaintiff and other residences of the Commonwealth of Massachusetts.  These actions constitute unfair and deceptive acts and practices in violation of G.L. c. 93A, § 2.

41.     Plaintiff has been directly harmed by Defendant's aforementioned violations of G.L. c. 93A as set forth above.

42.     Plaintiff, by and through his attorneys, have sent to Defendant by certified mail and a written demand for relief pursuant to G.L. c. 93A, § 9, identifying the claimant and reasonably describing the unfair acts and practices committed by Defendant and injuries suffered by Plaintiff.  A copy of this demand letter is attached herewith as Exhibit "A".

43.     Plaintiff received a letter from the attorney of Defendant in response to the aforesaid demand.  By way of this reply letter, Defendant failed to make a reasonable offer of relief to Plaintiff.  A copy of this reply letter is attached herewith as Exhibit "B".

44.     The Defendant's refusal to grant relief as requested by Plaintiff was in bad faith and with knowledge or reason to know that the acts of Defendant violated G.L. c. 93A, § 2.

        **WHEREFORE**, Plaintiff prays for the following relief:

1.      For this Court to enter judgment for Plaintiff and against Defendant;

2.      For this Court to award Plaintiff compensatory damages in the amount of Five Million Dollars ($5,000,000.00)

3.      For treble damages in accordance with G.L. c. 93A, § 9(3);

4.      For punitive damages in an amount to be set by this Court;

5.      For an award of attorney fees and the costs of this action;

6.      For a preliminary and permanent injunction enjoining Defendant from the marketing, promotion and sale of the SpoofCard service in the Commonwealth of Massachusetts;

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com

7.      For disgorgement of all proceeds and/or profits generated by Defendant from the sale of

the SpoofCard service in the Commonwealth of Massachusetts; and

8.      For such further and additional relief as Plaintiff may be entitled at law or in equity.

SIOBHAN WALSH, by her Attorney


/s/RICHARD B. REILING BBO 629203
RICHARD B. REILING
Attorneys at Law
Two Center Plaza, Suite 510
Boston, MA 02108
800-719-2680 Phone & Facsimile
Attorney for Plaintiff

And


SIOBHAN WALSH
By her Attorney

/s/TODD C. POMERLEAU
TODD C. POMERLEAU # 664974
Two Center Plaza, Suite 510
Boston, MA 02108
Attorney for Plaintiffs


## JURY DEMAND

Plaintiff demands trial by jury as to all issues herein.

Respectfully submitted:


/s/RICHARD B. REILING BBO 629203
RICHARD B. REILING #629203
Attorney at Law

PDF Created with deskPDF PDF Writer - Trial :: http://www.docudesk.com